McHenry County, Illinois
20MR00050
Date: 5/18/2020 4:33 PM
Katharine M. Keefe
Clerk of the Circuit Court

## IN THE CIRCUIT COURT FOR THE TWENTY-SECOND JUDICIAL CIRCUIT
## MCHENRY COUNTY, ILLINOIS

| | | |
|---|---|---|
| MOLON MOTORS AND COIL CORP., an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 20MR000505 |
| MISHCON de REYA, LLP, a New York Limited Liability Partnership, JOHN PETRSORIC, individually and MARK RASKIN, Individually, | ) ) ) ) ) | |
| Defendants. | ) ) | |

### COMPLAINT AT LAW
### FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff, Molon Motors and Coil Corporation ("Molon"), through its attorneys, McKenna Storer, for its Complaint at Law against Mishcon de Reya ("Mishcon"), John Petrsoric and Mark Raskin, (collectively "Defendants"), states as follows:

1.    Plaintiff, Molon, is a Corporation, incorporated under the laws of Illinois and authorized to do business in Illinois. Molon is a manufacturer of fractional and sub-fractional electric motors and gear motors.

2.    Defendant, Mishcon de Reya, LP, was a registered New York Limited Liability Partnership, which based on information and belief, was dissolved on January 17, 2020.

3.    Mishcon was considered a boutique New York law firm. Through its Partners, it agreed to represent Molon in its patent and trademark infringement claims against Nidec Motor Corporation. The primary partners who worked on this case were: Mark Raskin and John Petrsoric.

4.    Defendant, John Petrsoric, is an attorney licensed to practice in the State of New York.

NOTICE
THIS CASE IS HEREBY SET FOR A SCHEDULING CONFERENCE IN COURTROOM
TBD ON 08-18-2020 , AT 9:00 a.m. FAILURE TO APPEAR MAY RESULT
IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.

EXHIBIT A

5.    Defendant, Mark Raskin, is an attorney licensed to practice in the State of New York.

## FACTS COMMON TO ALL COUNTS

6.    Defendants were retained and undertook to file litigation on behalf of Plaintiff in the Northern District of Illinois captioned *Molon Motor and Coil Corporation v. Nidec Motor Corporation*, 1:16-CV-03545. ("Litigation").   The crux of the case is that the law firm failed to prosecute certain misappropriation of trade secret claims including the failure to complete written discovery and do any oral discovery prior to the closure of the discovery deadline, resulting in the dismissal of the trade secrets claim and causing monetary damages in (1) allowing continuing unfettered and unrestrained trade secret infringement by a competitor, (2) requiring Molon to hire new counsel and incur additional attorney fees to continue to prosecute the patent case as well as attempt to reopen discovery in the trade secret infringement claim and (3) requiring Molon to defend against a punitive attorney fee petition resulting from certain unauthorized statements made to the court by Petrsoric.

## Trade Secret Infringement

7.    Molon is a leading manufacturer of fractional and sub-fractional electric motors and gear motors, providing solutions to its customers based on their individual business requirements. It operates primarily in niche markets.

8.    The electric motor industry is highly competitive and Molon's success depends on numerous factors, including its ability to attract and retain reliable and qualified engineers, sales representatives and technical support personnel, to provide custom motor solutions, as well as obtain and maintain Molon's customer relationships.

9.    Molon's confidential information is vital to its operations and business interests.

10.    Molon invests significant financial and other resources in its motor development, maintaining its quality and expanding its customer relationships.

11.     Quality control, sales account executives and engineers at Molon have access to certain confidential computer systems that are used to track and store trade secret and confidential information and materials, including engineering documents, quality assurance documents, customer lists, customer information, customer proposals, communications with its customers, and other data in which it has a proprietary interest, all of which have been developed by Molon over several decades, at great expense.

12.     Molon has a number of policies, procedures, and agreements that it uses to protect its trade secret and confidential information, and safeguard its customer relationships. Molon owns all of the computers it uses. Molon does not employ portable data drives to access or to move data in its computer system. Unauthorized employees are prohibited from utilizing portable data drives to access or move data in its computer systems.

13.     To protect its business interests and the confidentiality of business operations, Molon took affirmative measures, including the utilization of restrictive covenants in its employment contracts, computer username and password protection and firewalls, limiting access to information safeguards and other measures, and restricting unauthorized use of data.

14.     The restrictive covenants in Molon's employment contracts are negotiated with each employee as part of their employment and include any combination of clauses concerning confidential information and trade secrets.

15.     Each restrictive covenant is limited in scope to protect both Molon's legitimate business interests while preventing undue hardship on the employee in his or her pursuit of employment in his or her area of expertise.

16.     Until May 31, 2013, Molon employed an individual by the name of Manish Dasai. Dasai was Molon's Head of Quality Control.

17.     As Head of Quality Control at Molon, Dasai's duties to Molon included: (i) providing quality control engineering, including product reliability testing; (ii) engaging Molon service personnel to achieve sales and service objectives by providing accurate engineering data, as

needed; (iii) ensuring that all required client paperwork was complete, accurate, and submitted on time; (iv) providing timely and accurate reports on quality assurance test results as required by Molon management; and (v) demonstrating flexibility and adaptability when assigned additional responsibilities or projects.

18.    As Head of Quality Control, Dasai had access to secret and confidential information and materials, including engineering documents, quality assurance documents, customer lists, customer information, customer proposals, communications with its customers, and other data in which it has a proprietary interest, all of which have been developed by Molon over an extensive period of time, at great expense.

19.    As a condition of employment, Dasai signed an employment agreement with Molon. This agreement contained several restrictive covenants, including trade secrets and confidential information clauses.

20.    In the restrictive covenants in his employment agreement, including those concerning trade secrets and confidential information, Dasai agreed that Molon's trade secrets and confidential information (as clearly defined in the agreements) were Molon's sole and exclusive property.  Dasai agreed that he would follow this and other restrictive covenants regarding Molon's trade secrets and confidential business information during his employment with Molon and for as long as the confidentiality of trade secrets and proprietary business information was to be maintained under applicable law.

21.    Despite the restrictive covenants and prohibition against use of external drives, beginning around January of 2013 through and including the day he resigned, Dasai down loaded documents from the Molon server, including but not limited to quality control information related to the production of many different motor lines.

22.     Dasai's computer at Molon showed activity that proprietary trade secret data and files were accessed and copied to a portable data drive. The portable data drive was neither owned by, nor known to, Molon. The download of this information was not authorized by Molon.

23.     Dasai accessed and downloaded onto a portable data drive, various trade secrets and confidential information from Molon's computers. Such information included customer information, drawings, customer quality control issues, manufacturing information and trade secrets related to how certain motors are manufactured. On multiple occasions prior to the time Dasai left Molon's employment, his computer was accessed under his username and password and a significant amount of files related to the engineering and design, quality control protocols and data, and customer specific data for Molon motors was copied to a Kingston portable data drive. The wrongfully-copied files consisted of trade secrets and confidential information. (Filed under seal herewith is a document detailing the particular files constituting Molon's trade secrets.) These files fall under the following categories of trade secret materials: (i) motor design and engineering drawings (¶ 1); (ii) motor production inspection protocols (¶ 2); (iii) motor production tools (¶ 3); (iv) quality control test protocols (¶ 4); (v) quality control test data and reports (¶ 5); and (vi) customer quality control communications (¶ 6) .

24.     Dasai left Molon at the end of May of 2013 for employment in a similar position with Molon's competitor and Nidec Motor's predecessor, Merkle-Korff ("Nidec"). Molon and Nidec have been competitors in the electric motor business for decades. They compete for custom motor designs, for example, for vending machines (i.e., the subject of the patent infringement counts), refrigerator icemakers, and breast pump motors. They also compete for standard, off-the-shelf electric motors, including those sold through large distribution channels.

25.    After Dasai joined Nidec, Dasai unlawfully disclosed Molon's trade secrets, including those that he had wrongfully copied from his Molon work computer.

26.    Dasai took confidential and proprietary trade secret information with him to Nidec

27.    Nidec's counsel disclosed the existence of a flash drive that they had received from Dasai.

28.    Moreover, based on Dasai's possession of confidential and proprietary information and the inevitable disclosure doctrine, Molon had a good-faith basis on information and belief to allege and prove Nidec used Molon's confidential information and trade secrets and confidential information in violation of both Federal law and the law of the State of Illinois in order to compete with Molon.

29.    Following Dasai's departure from Molon and retention by Nidec, Nidec was able to capture certain niche markets that had previously been Molon's niche markets.

30.    Based on information and belief, Dasai provided trade secrets and confidential information to Nidec Motors, including information regarding quality control and customer information.

31.    Given Dasai's prior employment with Molon and his wrongful copying of Molon's trade secrets, Nidec's use of the trade secrets can be inferred under the "inevitable disclosure doctrine."

32.    On information and belief, Nidec used the confidential and protected information gleamed from Dasai to engage in unfair and unlawful competition with Molon.

33.    As a direct and proximate result of Nidec's actual and threatened misappropriation of Molon's trade secrets and confidential information, Molon has suffered damages in an amount yet to be determined.

## Molon Retained Mishcon, Petrsoric and Raskin

34.     On or about February 4, 2016, Molon Motors and Coil Corporation ("Molon") retained the firm of Mishcon to represent it in services in connection with investigating and asserting potential patent infringement claims for one or more of Molon's patents as well as any ancillary and/or supplemental claims, including, but not limited, to "theft of trade secrets ("Claim(s)" or "Lawsuit(s)")." This retention was reduced to a written retention agreement, signed by both parties. Mark Raskin signed on behalf of Mishcon and copied John Petrsoric. (Exhibit A, Retention Agreement).

35.     In the retention letter drafted by the Mishcon firm, Mishcon specifically agreed to the following:

1. Mishcon would pursue, *inter alia*, patent and trade secret claims by investigating claims and if appropriate filing suit (Letter dated 2-4-2016, paragraph 1(a)(ii));

2. Mishcon would, at your election, (which you exercised with respect to the patent count), pursue an Appeal without additional compensation (Letter dated 2-4-2016, paragraph 1(d)(ii));

3. Mishcon's entire compensation would be a contingent percentage (Letter dated 2-4-2016, paragraph 3(a)(iii) and 3(b));

4. If Mishcon is terminated for good cause it would retain a *quantum meruit* claim only if there was a recovery (Letter dated 2-4-2016, paragraph 8(a)(ii)(C);

5. Good cause includes both malpractice and failure to pursue infringers diligently, as well as any breach of the retention agreement (Letter dated 2-4-2016, paragraph 8(c)); and

6. Mishcon agreed to allocate sufficient workers and resources to support the lawsuits filed by Mishcon on Molon's behalf (Letter dated 2-4-2016, paragraph 1(a) (ii)).

## Molon Lawsuit

36.     After the retention agreement was signed, Petrsoric and Raskin filed the Litigation, in the U.S. District Court for the Northern District of Illinois. The initial complaint was filed on March

23, 2016. The Third Amended Complaint was the operable complaint when the malpractice occurred. (Exhibit B) Count I alleged Patent Infringement for Patent 6.465.915, Count II alleged Patent Design Infringement for Patent D451.072, Count III alleged violations of the Defend Trade Secrets Act Of 2016 and Count IV alleged Violation of the Illinois Trade Secrets Act. The primary malpractice claim relates to the failure to prosecute the trade secret infringement counts; the patent claim is relevant only to the extent that the malpractice claim caused Molon to incur greater attorney fees in the patent claims.

37.     Counts III and IV were based on the improper misappropriation and use by Nidec of Molon's trade secrets. Molon's trade secrets lawsuit was based on two theories: the federal Defend Trade Secrets Act of 2016 and the Illinois Trade Secrets Act.

38.     The Defend Trade Secrets Act ("DTSA"), Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016, specifically allows a private right of action for misappropriation of trade secrets. Molon is an owner of trade secrets, as defined by DTSA which have been willfully misappropriated by Nidec through its agents. A person misappropriates a trade secret by, among other things, disclosing the trade secret despite knowing that it was acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use or from a person who had a duty to maintain its secrecy or use.

39.     Illinois' counterpart to this Act is the Trade Secrets Act. Under this Act, a person misappropriates a trade secret by, among other things, disclosing the trade secret despite knowing that it was "acquired under circumstances giving rise to a duty to maintain its secrecy or limits its use" or from a person who had a duty to maintain its secrecy or use. 765 ILCS 1065/2(b)(2)(B)(ii) and (III).

40.     The facts alleged in support of these claims were: Molon maintained confidential information related to customers as well as the invention, production, marketing and sales of its motors, (1) Dasai and Gomez, a second employee from Molon that joined Merkle, (Merkle, now known as Nidec), through their positions in quality control at Molon, had access to confidential

information, (2) Dasai and Gomez left Molon to go work for one of its competitors; (3) prior to leaving Molon, Dasai downloaded confidential trade secret documents onto a drive, which we believe Dasai provided to Nidec, and (4) Nidec has been using that confidential/trade secret material to compete with Molon.

41.     Paragraph 65 of the Third Amended Complaint alleges: on multiple occasions prior to the time Dasai left Molon's employment to begin employment at Nidec, his computer was accessed under his username and password and a significant amount of files related to the engineering and design, quality control protocols and data, and customer specific data for Molon was copied to a Kingston portable data drive. The wrongfully-copied files consisted of trade secrets and confidential information. Filed under seal herewith is a document detailing the particular files constituting Molon's trade secrets that were copied, along with a description of the nature of those files and the specific Molon products to which those files relate, as presently understood. (D.I. 65, Appendix to Third Amended Complaint.) These files fall under the following categories of trade secret materials: (i) motor design and engineering drawings (¶1); (ii) motor production inspection protocols (¶ 2); (iii) motor production tools (¶ 3); (iv) quality control test protocols (¶ 4); (v) quality control test data and reports (¶ 5); and (vi) customer quality control communications (¶ 6).

42.     Paragraph 65 of the Third Amended Complaint alleges: Upon information and belief, Dasai unlawfully disclosed Molon's trade secrets that he had wrongfully copied from his Molon work computer. Dasai left Molon for employment in a similar position with Molon's competitor and Nidec's predecessor, Merkle-Korff. Under these circumstances, given Dasai's prior employment with Molon and his wrongful copying of Molon's trade secrets (as detailed above in ¶ 65 and in the Appendix to Third Amended Complaint (D.I. 65)), Nidec's use of the trade secrets can be inferred under the "inevitable disclosure doctrine."

43.     A spread sheet of the downloaded materials was prepared by D4 (computer consultants).

**District Court Determined Molon Pled A Viable Claim**

44.     The District Court judge determined that there was a valid claim for trade secret infringement. While the Second Amended Complaint was pending, Nidec filed a Motion to Dismiss the federal and state misappropriation of trade secrets. Nidec's primary argument in the motion to dismiss was that there was nothing unlawful about Dasai copying the confidential files while he was an employee and that there was no plausible allegation that Nidec used the trade secrets contained on the thumb drive.

45.     Judge Chang of the U.S. District Court for the Northern District of Illinois determined there were sufficient facts to demonstrate that Dasai misappropriated the confidential information. Moreover, applying the "inevitable disclosure doctrine," allowing the plaintiff to prove a claim of trade secret misappropriation by demonstrating that Nidec' new employee will inevitably lead him to rely on Molon's secrets, and Molon also sufficiently pled that the trade secrets inevitably would be disclosed by Dasai to Nidec.

46.     Thus, the Motion to Dismiss was denied.

**Attorney Malpractice.**

47.     Judge Chang set forth discovery cut off dates.

48.     Unfortunately for Molon, the discovery phase is where the malpractice occurred.

49.     The discovery closure date was November 16, 2018. Thereafter, the parties consented to a one month extension of discovery. On December 21, 2018, fact discovery closed. At that time, the discovery was not completed on the infringement claims.

50.     Written discovery was not completed and was woefully inadequate. The Mishcon attorneys posed only seven interrogatories and Nidec refused to answer four of those. Of the 25 production requests, Nidec refused to produce any documents for 19 of those requests unless and until they had a meet and confer session. For several requests they provided contingent promises to produce conditioned on further actions by plaintiff. Although Nidec invited a "meet

and confer" session, Mishcon took no steps to have such a session or to try to enforce Molon's discovery rights within the discovery period.

51.     The Mishcon attorneys did not take a single deposition. Most significantly, the deposition of the primary perpetrator, Dasai, was never taken. Nor were any depositions taken of any other Nidec employees.

52.     Mishcon answered in response to discovery on behalf of Molon, the inevitable discovery doctrine applies to the knowledge of Dasai and others who were hired away from Molon during this period.

53.     Nevertheless, Mishcon took no action to compel any discovery after receiving stonewalling responses from Nidec.

### Petrsoric Made Unauthorized Statements to the Court

54.     Despite the failure to complete discovery in the infringement case and without the knowledge or authorization of Molon, on January 15, 2019, Petrsoric reported to the District Court that the fact discovery was completed and that Molon was considering dismissing the trade secret infringement counts.

### Petrsoric Misled Molon Into Believing Discovery Was Ongoing

55.     Petrsoric continued to hide its malpractice from Molon.

56.     Despite knowledge that the discovery had closed and Petrsoric's unauthorized statements to the Court, Petrsoric continued to send emails to Molon indicating that he intended to take depositions.

57.     In fact, as late as February 25, 2019, the Mishcon attorneys were maintaining the farce with Molon that he was moving forward and preparing for depositions of key Nidec employees. The Mishcon attorneys continued to take steps asking for information and prep time from Molon with Molon deponents. These depositions were not going forward (1) because they were in fact were barred by the discovery cutoff, or (2) because Mishcon was awaiting a dismissal of the Trade Secret Counts as early as August or September of 2018 and thought the Trade

Secret case was ending. Neither of these circumstances were known to Molon until January of 2019.

58.     After discovery had already closed, Petrsoric sent an email on February 25, 2019 to Molon requesting a meeting with a Molon engineer to go over data and drawings for the Litigation.

59.     The emails from Petrsoric and Raskin in 2018 and 2019 obfuscated the fact that no work had been performed by Mishcon and Petrsoric.

60.     Since discovery is never filed, Molon was dependent on Petrsoric's and Raskin's representations about the status of discovery.

### Orders Were Not Communicated to Molon

61.     Defendants did not provide adequate communication to Molon so that Molon could discover Defendants' abandonment of the case.

62.     The Orders in the Litigation that were not timely or accurately communicated to Molon include:

      a.  The order of 6/13/18, when the Court scheduled all fact discovery to be concluded by 11/16/2018 and ordered that the case shall be placed back on the litigation track. At the follow-up status the order of 9/06/18 stated that Counsel for both sides informed the Court that discovery was proceeding as scheduled. (Docket Sheet #129, 131) In fact, discovery was at a standstill because Mishcon was advising Defendants, without Molon's knowledge, that the Trade Secret Counts would be dismissed. The discovery cutoff was not communicated to Molon.

      b.  The order of 11/06/18 allowed Molon to reply to the amended answer of Nidec. A reply was not filed according to Pacer. (Docket Sheet #149).

      c.  The Order of 11/19/18 said Petrsoric had a personal circumstance that prevented him from completing the hearing being held via telephone. (Docket

Sheet #151). On 01/09/19, Petrsoric then requested a continuance of the 01/10/19 hearing. (Docket Sheet #152). A second continuance was reluctantly granted and 1/15/19 was the new hearing date.

d. The order of 1/15/19 shows that Mishcon through Petrsoric, without consent or knowledge of Plaintiff, informed the Court that Plaintiff is considering voluntarily dismissing the remaining trade secret claims. The order states that discovery was completed which was not accurate (Docket Sheet #153). Mishcon shared neither the order nor the representations to the Court with Molon.

e. The order of 02/07/19, Mishcon, without consent of Plaintiff, again asked for a continuance of the status hearing. (Docket Sheet #154). The request was granted. However, the Court stated that no further extension shall be granted and if expert discovery is required, then the expert reports will be due by 03/25/19. No efforts were ever undertaken to Molon's knowledge to obtain any experts or comply with this deadline.

### Petrsoric Withdraws and Continues to Commit Legal Malpractice

63. On February 28, 2019, Petrsoric informed the Court that he was seeking to withdraw due to family issues, which were later disclosed to Molon to relate to his wife's alcoholism.

64. During that hearing, Petrsoric admitted in open court on the record that he had failed to communicate with Molon adequately due to personal problems.

65. During that open-court hearing, Judge Chang indicated that he believed that Petrsoric had misled him, wherein Judge Chang stated: "It is also in the plaintiff's best interest at this point to get counsel to even help them navigate through the withdrawal, and it is – I am going to need a lot more explanation before I either approve or deny re-opening discovery on the trade

secret claim, because obviously, the representations that have been made to me have led me to think a very different direction of the case."

66.     Petrsoric later submitted a Motion under Seal with documents wherein he continued to violate the Rules of Ethics and stated that he began questioning the trade secret counts and the associated costs and he stalled the discovery process and claims that he discussed his reservations with Molon but admits he did not do so sufficiently.

67.     This motion was provided to the District Court judge presiding over the case and opposing counsel, rather than the standard practice of submitting a motion to withdraw *ex parte* before a non-presiding magistrate to avoid divulging confidential information or prejudicing a client's interests. In the Motion to Withdraw, Petrsoric again admitted that he had failed to attend to the Litigation in open court. Local counsel for Molon also noted that there had been a failure of communication.

<u>**Trade Secret Claims Dismissed Because of Lack of Discovery**</u>

68.     Thereafter, Molon secured new counsel. New counsel filed a Motion to Reopen Discovery, but the motion was denied.

69.     The District Court stated that Molon's remedy was a possible malpractice action against its attorneys.

70.     Thereafter, without sufficient facts to proceed to trial, the trade secret infringement counts were dismissed.

<u>**Opposing Counsel Filed a Petition for Attorney Fees**</u>

71.     After the dismissal of the trade secret infringement counts, Nidec's counsel filed a Petition for Attorney Fees claiming that the trade secret counts were pursued in bad faith.

72.     As part of the basis of the claim, opposing counsel relies upon statements made by Petrsoric to the Court (both in open court in January of 2019 and the Motion to Withdraw). In its Petition for Attorney Fees, opposing counsel has claimed in excess of $233,000 in attorney fees. This claim is still pending.

**Molon Incurred Additional Attorney Fees**

73.     At great expense, Molon was forced to retain new counsel to (1) continue to prosecute the patent counts where Mishcon failed to file a Reply Brief in the patent appeal before the Federal Circuit, (2) to attempt to extend discovery deadlines in the trade secret portion of the case, (3) to respond to the attorney fee claim and (4) to pursue a claim against Mishcon.

### COUNT I
### LEGAL MALPRACTICE AGAINST MISHCON

1-73.   Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.     In an action to recover damages for legal malpractice, a plaintiff must demonstrate that the attorney (1) failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and (2) that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

75.     Molon and Mishcon had an attorney-client relationship. Mishcon (1) failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and (2) that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

76.     Mishcon owed duties both contractually and in tort. These duties included: the duty to advise the client of the status of the case and of significant developments, the duty to meet Court deadlines, the duty to provide timely analysis of issues, the duty to do a proper Rule 11 investigation or work up before filing counts, the duty to communicate and make recommendations to the client for the client's decision making, the duty to bring competence, diligence and supervision to the client's project and the duty to perform the agreed upon services.

77.     Mishcon owed Molon a duty of care in each of these areas, and failed to meet that duty on one or more occasions, including but not limited to:

       a.   The failure to meet court mandated discovery deadlines;

       b.   The failure to complete written discovery;

   c.  The failure to take the depositions of any witnesses let alone the key witnesses;

   d.  The failure to properly investigate or work up the case;

   e.  The abandonment of a claim without the knowledge or consent of the client;

   f.  The reporting in open court to the judge and Defendant, without Molon's knowledge, of a plan to dismiss the Trade Secret Counts from the complaint without any prior discussion or input from Molon.

   g.  The failure to disclose to Molon that the discovery deadline had passed without the completion of discovery;

   h.  The misrepresentations to Molon that discovery was ongoing despite knowing that the discovery deadline had expired; having already told the District Court that the discovery was completed and Molon was considering dropping the trade secret counts;

   i.  Even after informing the Court of the planned voluntary dismissal, failing to inform Molon about this disclosure to the Court.

   j.  Failing to provide Molon with the necessary facts and analysis to allow Molon to make informed litigation decisions that were essential to the case.

   k.  Continuing to take steps asking for information and preparation time from Molon with Molon deponents even though these depositions were not going forward because they were (1) barred by the discovery cutoff, or (2) awaiting a dismissal of the Trade Secret Counts as early as August or September of 2018 and thought the Trade Secret case was ending.

   l.  And otherwise failing to handle the Litigation in a competent and transparent manner.

     78.   Mishcon and its attorneys failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and that the attorneys' breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

79.    Had they exercised the ordinary and reasonable skills and knowledge commonly possessed by a member of the legal profession, Molon would have prevailed in its trade secret claims against Nidec.

80.    The attorneys' conduct fell far below the standard of care. There is overwhelming evidence that the attorneys committed malpractice – the attorneys failed to prosecute Molon's case, did virtually no discovery, allowed discovery deadlines to lapse without engaging in adequate discovery, failed to take depositions of any witnesses let alone key witnesses, failed to keep Molon adequately informed, and disclosed confidential information to the judge and opposing counsel related to the status of the case.

81.    Moreover, as a result of the lack of discovery, Molon was forced to incur additional attorney fees, dismiss the trade secrets claims against Nidec and defend against a petition for attorney fees.

82.    The legal malpractice of the attorneys, in both omissions and commissions, resulted in damages to Molon.

83.    But for their malpractice, Molon would have prevailed in the underlying trade secret action and would not have incurred the damages that it has and continues to incur.

84.    Had the attorneys completed the discovery, Molon would have been able to prove that Nidec received from past Molon employees confidential information both through stolen electronic documents and inevitable disclosure doctrine.

85.    Under the Illinois and Federal trade secret acts, the plaintiff may recover: actual damages and actual loss caused by the misappropriation and unjust enrichment by the use of the misappropriated trade secret, or if neither can be proven, reasonable royalties, punitive damages and attorney fees.

86.    As a result of the malpractice, Molon suffered damages in the following categories:

    a.  Attorney fees incurred after the malpractice had occurred in prosecuting both the patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

    b.  Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of business, Nidec's increase in business and marketplace share, as well as punitive damages; and

    c.  Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendant in an amount in excess of $50,000.

**COUNT II**
**LEGAL MALPRACTICE AGAINST PETRSORIC**

1-73.  Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.    In an action to recover damages for legal malpractice, a plaintiff must demonstrate that the attorney (1) failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and (2) that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

75.    Molon and Petrsoric had an attorney-client relationship. Petrsoric (1) failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and (2) his breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

76.    Petrsoric owned duties both contractually and in tort. These duties included: the duty to advise the client of the status of the case and of significant developments, the duty to meet Court deadlines, the duty to provide timely analysis of issues, the duty to do a proper Rule 11 investigation or "work up" before filing counts, the duty to communicate with the client, the duty to

bring competence, diligence and supervision to the client's project and the duty to perform the agreed-upon services.

77.    Petrsoric owed Molon a duty of care in each of these areas, and failed to meet that duty on one or more occasions, including:

    a.    The failure to meet court mandated discovery deadlines;

    b.    The failure to complete written discovery;

    c.    The failure to take the depositions of any witnesses, let alone the key witnesses;

    d.    The failure to properly investigate and work up the case;

    e.    The abandonment of a claim without the knowledge or consent of the client;

    f.    The reporting in open court to the judge and Defendant, without Molon's knowledge, of a plan to dismiss the Trade Secrets Counts from the complaint without any prior discussion or input from Molon.

    g.    The failure to disclose to Molon that the discovery deadline had passed without the completion of discovery;

    h.    The misrepresentations to Molon that discovery was ongoing despite knowing that the discovery deadline had expired; having already told the District Court that the discovery was completed and Molon was considering dropping the trade secret counts;

    i.    Even after informing the Court of the planned voluntary dismissal, Petrsoric did not inform Molon about this disclosure to the Court.

    j.    The failure to provide Molon with necessary facts and analysis to allow Molon to make informed litigation decisions that were essential to the case.

    k.    Continued to take steps asking for information and preparation time from Molon with Molon deponents even though these depositions were not going forward because (1) they were barred by the discovery cutoff, or (2) awaiting a

dismissal of the Trade Secret Counts as early as August or September of 2018, and thought the Trade Secret case was ending.

78.     Petrsoric further failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, and his breach of duty proximately caused plaintiff to sustain actual and ascertainable damages. His failures include but are not limited to:

      a.  Failed to exercise reasonable skill and knowledge in completing discovery;

      b.  Allowed discovery dates to lapse without (1) completing discovery and/or (2) securing an extension;

      c.  Made decisions on the case that were the sole province of the client, including the statements that discovery was completed and that the party was considering dismissing the infringement counts; and

      d.  After discovery was closed, he further concealed the discovery closure and further delayed Molon's ability to reopen discovery with the court by falsely leading Molon to believe that discovery remained open and the case was ongoing, including sending purported outlines of deposition topics and requests to use conference rooms for depositions that he knew were never going to take place.

79.     Petrsoric failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

80.     Had Petrsoric exercised the ordinary and reasonable skills and knowledge commonly possessed by a member of the legal profession, Molon would have prevailed in its trade secret claims against Nidec.

81.     The attorney's conduct fell far below the standard of care. There is overwhelming evidence that the attorneys committed malpractice – the attorneys failed to prosecute Molon's

case, did virtually no discovery, allowed discovery deadlines to lapse without engaging in adequate discovery, failed to take depositions of any witnesses let alone key witnesses, failed to keep Molon adequately informed, and disclosed confidential information to the judge and opposing counsel related to the status of case.

82. Moreover, as a result of the lack of discovery, Molon was forced to incur additional attorney fees, dismiss the trade secrets claims against Nidec and defend against a petition for attorney fees.

83. The legal malpractice of the attorneys, in both omissions and commissions, resulted in damages to Molon.

84. But for their malpractice, Molon would have prevailed in the underlying trade secret action and would not have incurred the damages that it has and continues to incur.

85. Had the attorneys completed discovery, Molon would have been able to prove that Nidec received from past Molon employees confidential information (both through stolen documents and the inevitable disclosure doctrine.)

86. Under the Illinois and Federal trade secret acts, the plaintiff may recover: actual damages (actual loss caused by the misappropriation and unjust enrichment by the use of the misappropriated trade secret, or if neither can be proven, reasonable royalties), punitive damages and attorney fees.

87. As a result of the malpractice, Molon suffered damages in the following categories:

    a. Attorney fees incurred after the malpractice had occurred in prosecuting both the patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

    b. Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of the business, Nidec's increase in business and marketplace share as well as punitive damages; and

      c. Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendant in an amount in excess of $50,000.

## COUNT III
## LEGAL MALPRACTICE AGAINST RASKIN

1-73.   Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.   In an action to recover damages for legal malpractice, a plaintiff must demonstrate that the attorney (1) failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and (2) that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

75.   Molon and Raskin had an attorney-client relationship. Raskin (1) failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and (2) Raskin's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

76.   Raskin owed duties both contractually and in tort. These duties included: the duty to advise the client of the status of the case and of significant developments, the duty to meet Court deadlines, the duty to provide timely analysis of issues, the duty to do a proper Rule 11 investigation or "work up" before filing counts, the duty to communicate with the client, the duty to bring competence, diligence and supervision to the client's project and the duty to perform the agreed-upon services.

77.   Raskin owed Molon a duty of care in each of these areas, and failed to meet that duty on one or more occasions, including:

      a. The failure to meet court-mandated discovery deadlines;

      b. The failure to complete written discovery;

c. The failure to take the depositions of the any witnesses, let alone the key witnesses;

d. The failure to properly investigate and work up the case;

e. The abandonment of a claim without the knowledge or consent of the client;

f. The reporting in open court to the judge and Defendant, without Molon's knowledge, of a plan to dismiss Trade Secret Counts from the complaint without any prior discussion or input from Molon.

g. The failure to disclose to Molon that the discovery deadline had passed without the completion of discovery;

h. The misrepresentations to Molon that discovery was ongoing despite knowing that the discovery deadline had expired; having already told the District Court that the discovery was completed and Molon was considering dropping the trade secret counts;

i. Even after informing the Court of the planned voluntary dismissal, Mishcon did not inform Molon about this disclosure to the Court.

j. Failure to provide Molon with necessary facts and analysis to allow Molon to make informed litigation decisions that were essential to the case.

k. Continued to take steps asking for information and preparation time from Molon with Molon deponents even though these depositions were not going forward because (1) they were barred by the discovery cutoff, or (2) because Defendant was awaiting a dismissal of the Trade Secret Counts as early as August or September of 2018, and thought the Trade Secret case was ending.

78.     Raskin failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and his breach of duty proximately caused plaintiff to sustain actual and ascertainable damages.

79.     Concerns regarding Petrsoric's inattentiveness were brought to Raskin's attention. His failures additionally include but are not limited to:

    a.  Failed to exercise reasonable skill and knowledge in handing the case;

    b.  Allowed discovery dates to lapse without (1) completing discovery or (2) securing an extension;

    c.  Failed to recognize the decline in his partner's representation and to take over the matter; and

    d.  Even after Molon asked Raskin if Petrsoric was prosecuting the case and engaging in discovery, Raskin failed to honestly discuss the issues with Molon and instead reassured Molon that Petrsoric was properly handling the matter.

80.     Raskin failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, and that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

81.     Had they exercised the ordinary and reasonable skills and knowledge commonly possessed by a member of the legal profession, Molon would have prevailed in its trade secret claims against Nidec.

82.     Raskin's conduct fell far below the standard of care. There is overwhelming evidence that the attorneys committed malpractice – the attorneys failed to prosecute Molon's case, did virtually no discovery, allowed discovery deadlines to lapse without engaging in adequate discovery, failed to take depositions of any witnesses let alone key witnesses, failed to keep Molon adequately informed, and disclosed confidential information to the judge and opposing counsel related to the status of the case.

83.     Moreover, as a result of the lack of discovery, Molon was forced to incur additional attorney fees, dismiss the trade secrets claims against Nidec and defend against a petition for attorney fees. The legal malpractice of the attorneys, in both omissions and commissions, resulted in damages to Molon.

84.    But for their malpractice, Molon would have prevailed in the underlying trade secret action and would not have incurred the damages that it has and continues to incur.

85.    Had the attorneys completed discovery, Molon would have been able to prove that Nidec received from past Molon employees confidential information (both through stolen documents and inevitable disclosure doctrine.)

86.    Under the Illinois and Federal trade secret acts, the plaintiff may recover: actual damages (actual loss caused by the misappropriation and unjust enrichment by the use of the misappropriated trade secrets or if neither can be proven, reasonable royalties), punitive damages and attorney fees.

87.    As a result of the malpractice, Molon suffered damages in the following categories:

    a.   Attorney fees incurred after the malpractice had occurred in prosecuting both the patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

    b.   Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of the business, Nidec's increase in business and marketplace share as well as punitive damages; and

    c.   Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendant in an amount in excess of $50,000.

## COUNT IV
## BREACH OF FIDUCIARY DUTY AGAINST MISHCON

1-73.  Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.    There existed a fiduciary relationship between Molon and Mishcon.

75.     The fiduciary duty owed by an attorney to a client encompasses the obligations of utmost candor, rectitude, care, loyalty, and good faith.

76.     Mishcon breached the fiduciary duty by:

a.      failing to promptly notify Molon that its attorneys were unable to fulfill the obligations of the attorney-client representation;

b.      failing to properly advise the client of the status of the case;

c.      disclosing confidential information to both the court and opposing counsel that impacted the proceedings and placed Molon in a false light;

d.      falsely responding to Molon's concern that Petrsoric was no longer acting as a reasonable attorney by assuring Molon that Petrsoric was properly prosecuting the case, and that Mishcon was monitoring the file; and

e.      failing to disclose, when it knew or should have known, Petrsoric or one of his family members, was impaired to such an extent that he was unable to fulfill his attorney-client relationship, obligations and duties.

74.     Mishcon further breached the fiduciary duty in drafting an arbitration clause that it knew or should have known was ambiguous and unenforceable, and they were unable to fulfill their obligations under the contract.

75.     As a result of the malpractice, Molon suffered damages in the following categories:

a.      Attorney fees incurred after the malpractice had occurred in prosecuting both the patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

b.      Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of the business, Nidec's increase in business and marketplace share as well as punitive damages; and

c.      Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendants in an amount in excess of $50,000.

## COUNT V
## BREACH OF FIDUCIARY DUTY AGAINST PETRSORIC

1-73. Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.   There was a fiduciary relationship between Molon and Petrsoric.

75.   The fiduciary duty owed by an attorney to a client encompasses the obligations utmost candor, rectitude, care, loyalty, and good faith.

76.   Petrsoric breached the fiduciary duty by:

a.   failing to promptly notify Molon that he was unable to fulfill the obligations of the attorney client representation;

b.   failing to properly advise Molon of the status of the case;

c.   disclosing confidential information to both the court and the opposing counsel that impacted the proceedings and placed Molon in a false light;

d.   negligently or falsely responding to Molon's concern that Petrsoric was no longer acting as a reasonable attorney by assuring Molon that Petrsoric was properly prosecuting the case and that Mishcon was monitoring the file;

e.   failing to disclose, that he or one of his family members, was impaired to such an extent that he was unable to fulfill his attorney client relationship, obligations and duties; and

f.   making false and/or misleading representations to Molon regarding the status of the case.

77.   As a result of the breach of fiduciary duties, Molon suffered damages in the following categories:

    a.  Attorney fees incurred after the malpractice had occurred in prosecuting both patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

    b.  Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of the business, Nidec's increase in business and marketplace share as well as punitive damages; and

    c.  Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendant in an amount in excess of $50,000.

## COUNT VI
## BREACH OF FIDUCIARY DUTY AGAINST RASKIN

1-73.  Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.    There was a fiduciary relationship between Molon and Raskin.

75.    The fiduciary duty owed by an attorney to a client encompasses the obligations utmost candor, rectitude, care, loyalty, and good faith.

76.    Raskin breached the fiduciary duty by:

    a.  failing to promptly notify Molon that its attorneys were unable to fulfill the obligations of the attorney-client representation;

    b.  failing to properly advise the client of the status of the case;

    c.  disclosing confidential information to both the court and the opposing counsel that impacted the proceedings and placed Molon in a false light;

    d.  falsely responding to Molon's concern that Petrsoric was no longer acting as a reasonable attorney by assuring Molon that Petrsoric was properly prosecuting the case and that Mishcon was monitoring the file; and

   e.  failing to disclose, when it knew or should have known, Petrsoric or one of
his family members, was impaired to such an extent that he was unable to
fulfill his attorney-client relationship, obligations and duties.

77. As a result of the breach of fiduciary duty, Molon suffered damages in the following
categories:

  a. Attorney fees incurred after the malpractice had occurred in prosecuting both
the patent case and attempts to reopen discovery to pursue the trade secrets
case after the law firm withdrew.

  b. Damages from the misappropriation of Molon's trade secrets including Molon's
cost of developing the trade secrets, Molon's loss of the business, Nidec's
increase in business and marketplace share as well as punitive damages; and

  c. Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be
entered in favor of Molon Motor Coil Corporation and against Defendant in an amount in excess
of $50,000.

### COUNT VII
### BREACH OF CONTRACT
### AGAINST MISHCON, PETRSORIC AND RASKIN

1-73. Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74. There was a contractual relationship between Molon and Defendants.

75. Mishcon breached the contract and failed to perform under the terms of the
Retention Agreement.

76. Molon satisfied all its obligations under the Retention Agreement.

77. As a result of the breach of contract, Molon suffered damages in the following
categories:

a. Attorney fees incurred after the malpractice had occurred in prosecuting both the patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

b. Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of the business, Nidec's increase in business and marketplace share as well as punitive damages; and

c. Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendant in an amount in excess of $50,000.

### COUNT VIII
### ANTICIPATORY BREACH OF CONTRACT
### AGAINST MISHCON, PETRSORIC AND RASKIN

1-73. Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74. There was a contractual relationship between Molon and Defendants.

75. Under the terms of the Retention Agreement, Defendants agreed to the following:

(a) Right to Pursue Infringers. Client is executing this Retention Agreement to engage Mishcon's services in connection with investigating and asserting potential patent infringement claims for one or more of the Patents as well as any ancillary and/or supplemental claims, including, but not limited, to theft of trade secrets ("Claim(s)" or "Lawsuit(s)"). Such representation might include negotiating agreements related to the Claims and/or prosecuting one or more Lawsuits ("Enforcement Activity") against entities selected by Client and Mishcon, referred to as "Infringer(s)".

76. The Retainer Agreement set forth methods for Mishcon to withdraw from providing services:

5. Withdrawal of Mishcon.

(a) Client agrees that Mishcon, in its sole discretion and after completion of the Evaluation Period, may withdraw from its representation of Client in connection with this undertaking for any reason, including but not limited to the following remaining uncured after thirty (30) days' notice to Client:

(i)    Client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good-faith argument of an extension, modification, or reversal of existing law as determined in Mishcon's reasonable discretion;

(ii)   Client insists that Mishcon pursue a course of conduct that is illegal or that is prohibited under the State Bar Rules as determined in Mishcon's reasonable discretion;

(iii)  Client fails to perform any covenant (whether monetary or non-monetary) of this Retention Agreement and the expiration of a fifteen (15) day right to cure period after written notice from Mishcon;

(iv)   Client breaches this Retention Agreement;

(v)    Mishcon determines, after further investigation of the facts, that the value of the case does not justify its budgeted investment in the case; or

(vi)   Mishcon determines, after further investigation of the facts, that the facts are materially different from those represented to Mishcon by Client.

77.    Mishcon anticipatorily breached the contract by failing to perform under the agreement including:

a.     failing to prosecute the trade secret claims once the claims were filed;

b.     failing to communicate with Molon; and

c.     failing to withdraw from the case pursuant to Paragraph 7 of the agreement when it stopped prosecuting the matter.

78.    As a result of the anticipatory breach of contract, Molon suffered damages in the following categories:

a.     Attorney fees incurred after the malpractice had occurred in prosecuting both the patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

b.  Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of the business, Nidec's increase in business and marketplace share as well as punitive damages; and

c.  Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendants in an amount in excess of $50,000.

**COUNT IX**
**DECLARATORY JUDGMENT**
**INVALID ARBITRATION PROVISION**
**AGAINST MISHCON, PETRSORIC AND RASKIN**

1-73.  Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.  Molon and Mishcon entered into a Retainer Agreement for legal services. (Ex. A).

75.  The scope of services for the Retainer Agreement included the following:

(a)  <u>Right to Pursue Infringers.</u> Client is executing this Retention Agreement to engage Mishcon's services in connection with investigating and asserting potential patent infringement claims for one or more of the Patents as well as any ancillary and/or supplemental claims, including, but not limited to theft of trade secrets ("Claim(s)" or "Lawsuit(s)"). Such representation might include negotiating agreements related to the Claims and/or prosecuting one or more Lawsuits ("Enforcement Activity") against entities selected by Client and Mishcon, referred to as "Infringer(s)".

76.  The Retainer Agreement contained a dispute resolution paragraph stating:

11. <u>Disputes.</u>

(a)    <u>Arbitration.</u> All parties to this Retention Agreement agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Retention Agreement or arising out of or relating to Mishcon's representation of the Client, including disputes concerning Mishcon's fees or charges or any claims of malpractice, shall be finally settled by mandatory binding arbitration held in New York, New York and conducted in accordance with the applicable rules of the American Arbitration Association ("AAA"), with each party to bear its own costs and attorneys' fees and disbursements. Such proceeding shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three (3) arbitrator panel with each side selecting one arbitrator

and the two arbitrators selected by the Parties choosing the third arbitrator. If any such dispute between the Parties concerning our fees or charges involves (i) an amount in question that is $50,000 or less; or (ii) each and every Party so agrees, such dispute or controversy shall be submitted to binding arbitration under Part 137 of the Rules of the Chief Administrator of the New York Courts. The Client agrees that it has read the official instructions and procedures for Part 137 (a copy of which is available upon request), and agree to resolve fee disputes under Part 137 where applicable. The Client expressly agrees that prejudgment remedies, including but not limited to attachments, garnishments, receiverships and preliminary injunctions in aid of any arbitration between the parties may be adjudicated before (i) the AAA subject to the Optional Rules for Emergency Measures of Protection and any other applicable rules, or (ii) a court of competent jurisdiction. Judgment on a binding arbitration award may be entered in the United States District Court for the Southern District of New York or any other court of competent jurisdiction. Such proceedings have the potential to provide a more timely, more economic and more confidential resolution of any dispute between the Parties. The Parties further agree that there will likely be less discovery and a determination by an agreed upon arbitrator or arbitrators rather than a judge or jury. The Parties mutually acknowledge that, by this agreement to arbitrate, each Party irrevocably waives its rights to court or jury trial of any such disputes. Client acknowledges that it has the right to consult separate legal counsel at any time as to any matter, including whether to enter into this Retention Agreement and consent to the foregoing agreement to arbitrate.

{Ex. A}

77.     The Retainer Agreement is ambiguous and invalid.

78.     The Retainer Agreement fails to provide necessary items in order to apprise Plaintiff of any and all rights Molon is waiving, including the right to appeal.

79.     The Retainer Agreement fails to provide for how the costs for arbitration would be allocated.

80.     The Retainer Agreement fails to provide a method for notifying the opposing party of a demand for arbitration.

81.     The Retainer Agreement is one-sided, only putting the onus on the Client to arbitrate, is over-reaching and illusory.

Wherefore the Plaintiff, Molon Motor and Coil Corporation, respectfully requests that this Court enter an order finding the arbitration provision invalid and set this case for trial in the Circuit Court of McHenry County and any additional relief it is entitled.

**COUNT X**
**DECLARATORY JUDGMENT**
**ANTICIPATORY BREACH OF CONTRACT**
**AGAINST MISHCON, PETRSORIC AND RASKIN**

1-73.   Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.   Molon and Mishcon entered into a Retainer Agreement for legal services. (Ex. A).

75.   The scope of services for the Retainer Agreement included the following:

(a)   <u>Right to Pursue Infringers.</u> Client is executing this Retention Agreement to engage Mishcon's services in connection with investigating and asserting potential patent infringement claims for one or more of the Patents as well as any ancillary and/or supplemental claims, including, but not limited to theft of trade secrets ("Claim(s)" or "Lawsuit(s)"). Such representation might include negotiating agreements related to the Claims and/or prosecuting one or more Lawsuits ("Enforcement Activity") against entities selected by Client and Mishcon, referred to as "Infringer(s)".

76.   The Retainer Agreement set forth methods for Mishcon to withdraw from providing services:

5.   <u>Withdrawal of Mishcon.</u>

(a)   Client agrees that Mishcon, in its sole discretion and after completion of the Evaluation Period, may withdraw from its representation of Client in connection with this undertaking for any reason, including but not limited to the following remaining uncured after thirty (30) days' notice to Client:

(vii)   Client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good-faith argument for an extension, modification, or reversal of existing law as determined in Mishcon's reasonable discretion;

(viii)   Client insists that Mishcon pursue a course of conduct that is illegal or that is prohibited under the State Bar Rules as determined in Mishcon's reasonable discretion;

(ix)   Client fails to perform any covenant (whether monetary or non-monetary) of this Retention Agreement and the expiration of a fifteen (15) day right to cure period after written notice from Mishcon;

(x)   Client breaches this Retention Agreement;

(xi)     Mishcon determines, after further investigation of the facts, that the value of the case does not justify its budgeted investment in the case; or

(xii)    Mishcon determines, after further investigation of the facts, that the facts are materially different from those represented to Mishcon by Client.

77.     The Retainer Agreement contained a paragraph stating:

11. Disputes.

(a)     Arbitration. All parties to this Retention Agreement agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Retention Agreement or arising out of or relating to Mishcon's representation of the Client, including disputes concerning Mishcon's fees or charges or any claims of malpractice, shall be finally settled by mandatory binding arbitration held in New York, New York and conducted in accordance with the applicable rules of the American Arbitration Association ("AAA"), with each party to bear its own costs and attorneys' fees and disbursements. Such proceeding shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three (3) arbitrator panel with each side selecting one arbitrator and the two arbitrators selected by the Parties choosing the third arbitrator. If any such dispute between the Parties concerning our fees or charges involves (i) an amount in question that is $50,000 or less; or (ii) each and every Party so agrees, such dispute or controversy shall be submitted to binding arbitration under Part 137 of the Rules of the Chief Administrator of the New York Courts. The Client agrees that it has read the official instructions and procedures for Part 137 (a copy of which is available upon request), and agrees to resolve fee disputes under Part 137 where applicable. The Client expressly agrees that prejudgment remedies, including but not limited to attachments, garnishments, receiverships and preliminary injunctions in aid of any arbitration between the parties may be adjudicated before (i) the AAA subject to the Optional Rules for Emergency Measures of Protection and any other applicable rules, or (ii) a court of competent jurisdiction. Judgment on a binding arbitration award may be entered in the United States District Court for the Southern District of New York or any other court of competent jurisdiction. Such proceedings have the potential to provide a more timely, more economic and more confidential resolution of any dispute between the Parties. The Parties further agree that there will likely be less discovery and a determination by an agreed upon arbitrator or arbitrators rather than a judge or jury. The Parties mutually acknowledge that, by this agreement to arbitrate, each Party irrevocably waives its rights to court or jury trial of any such disputes. Client acknowledges that it has the right to consult separate legal counsel at any time as to any matter, including whether to enter into this Retention Agreement and consent to the foregoing agreement to arbitrate.

(Exhibit A).

78.     Mishcon did not fulfill its obligations under the Retainer Agreement.

79.     Despite being retained to represent Molon in the trade secret matter, Mishcon stopped pursuing the trade secret claims several months prior to withdrawing.

80.     Mishcon did not complete discovery related to the trade secrets counts, failed to tell Molon that it was no longer pursuing the trade secret counts until several months after discovery had closed, pretended and misrepresented to Molon that Mishcon was still engaging in discovery after the discovery had closed, told the court without the permission or knowledge of Molon, that discovery was completed and that they were "probably" dismissing the trade secret case.

81.     Despite a provision permitting Mishcon to withdraw from the case, Mishcon simply stopped representing Molon in the trade secret issue.

82.     Mishcon anticipatorily breached its own Retention Agreement and should not be able to benefit from its terms.

83.     To permit Mishcon to enforce the Retention Agreement would be unconscionable.

Wherefore the Plaintiff, Molon Motor and Coil Corporation, respectfully requests that this Court enter an order finding the arbitration provision invalid and set this case for trial in the Circuit Court of McHenry County and any additional relief it is entitled.

**COUNT XI**
**DECLARATORY JUDGMENT**
**UNCONSCIONABLE**
**AGAINST MISHCON, PETRSORIC AND RASKIN**

1-73.   Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.     Molon and Mishcon entered into a Retainer Agreement for legal services. (Ex. A).

75.     The scope of services for the Retainer Agreement included the following:

(a)     <u>Right to Pursue Infringers.</u> Client is executing this Retention Agreement to engage Mishcon's services in connection with investigating and asserting potential patent infringement claims for one or more of the Patents as well as any ancillary and/or supplemental claims, including, but not limited, theft of trade

secrets ("Claim(s)" or "Lawsuit(s)"). Such representation might include negotiating agreements related to the Claims and/or prosecuting one or more Lawsuits ("Enforcement Activity") against entities selected by Client and Mishcon, referred to as "Infringer(s)".

76.     The Retainer Agreement set forth methods for Mishcon to withdraw from providing services:

5.      <u>Withdrawal of Mishcon.</u>

(a)     Client agrees that Mishcon, in its sole discretion and after completion of the Evaluation Period, may withdraw from its representation of Client in connection with this undertaking for any reason, including but not limited to the following remaining uncured after thirty (30) days' notice to Client:

(i)     Client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument of an extension, modification, or reversal of existing law as determined in Mishcon's reasonable discretion;

(ii)    Client insists that Mishcon pursue a course of conduct that is illegal or that is prohibited under the State Bar Rules as determined in Mishcon's reasonable discretion;

(iii)   Client fails to perform any covenant (whether monetary or non-monetary) of this Retention Agreement and the expiration of a fifteen (15) day right to cure period after written notice from Mishcon;

(iv)    Client breaches this Retention Agreement;

(v)     Mishcon determines, after further investigation of the facts, that the value of the case does not justify its budgeted investment in the case; or

(vi)    Mishcon determines, after further investigation of the facts, that the facts are materially different from those represented to Mishcon by Client.

77.     The Retainer Agreement contained a paragraph stating:

11. <u>Disputes.</u>

(a)     <u>Arbitration.</u> All parties to this Retention Agreement agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Retention Agreement or arising out of or relating to Mishcon's representation of the Client, including disputes concerning Mishcon's fees or charges or any claims of malpractice, shall be finally settled by mandatory

binding arbitration held in New York, New York and conducted in accordance with the applicable rules of the American Arbitration Association ("AAA"), with each party to bear its own costs and attorneys' fees and disbursements. Such proceeding shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three (3) arbitrator panel with each side selecting one arbitrator and the two arbitrators selected by the Parties choosing the third arbitrator. If any such dispute between the Parties concerning our fees or charges involves (i) an amount in question that is $50,000 or less; or (ii) each and every Party so agrees, such dispute or controversy shall be submitted to binding arbitration under Part 137 of the Rules of the Chief Administrator of the New York Courts. The Client agrees that it has read the official instructions and procedures for Part 137 (a copy of which is available upon request), and agrees to resolve fee disputes under Part 137 where applicable. The Client expressly agrees that prejudgment remedies, including but not limited to attachments, garnishments, receiverships and preliminary injunctions in aid of any arbitration between the parties may be adjudicated before (i) the AAA subject to the Optional Rules for Emergency Measures of Protection and any other applicable rules, or (ii) a court of competent jurisdiction. Judgment on a binding arbitration award may be entered in the United States District Court for the Southern District of New York or any other court of competent jurisdiction. Such proceedings have the potential to provide a more timely, more economic and more confidential resolution of any dispute between the Parties. The Parties further agree that there will likely be less discovery and a determination by an agreed upon arbitrator or arbitrators rather than a judge or jury. The Parties mutually acknowledge that, by this agreement to arbitrate, each Party irrevocably waives its rights to court or jury trial of any such disputes. Client acknowledges that it has the right to consult separate legal counsel at any time as to any matter, including whether to enter into this Retention Agreement and consent to the foregoing agreement to arbitrate.

(Exhibit A).

78.     Mishcon did not fulfill its obligations under the Retainer Agreement.

79.     Despite being retained to represent Molon in the trade secret matter, Mishcon stopped pursuing the trade secret claims several months prior to withdrawing.

80.     Mishcon did not complete discovery related to the trade secrets counts, failed to tell Molon that it was no longer pursuing the trade secret counts until several months after discovery had closed, pretended and misrepresented to Molon that Mishcon was still engaging in discovery after discovery had closed, told the court without the permission or prior knowledge of

Molon, that discovery was completed and that they were "probably" dismissing the trade secret case.

81.     Despite a provision permitting Mishcon to withdraw from the case, Mishcon simply stopped representing Molon in the trade secret issue.

82.     Mishcon, through Petrsoric, made material misrepresentations regarding the status of discovery, which prevented Molon from discovering the anticipatory breach and acting sooner to protect its interests.

83.     To permit Mishcon to enforce the Retention Agreement would be unconscionable.

Wherefore, the Plaintiff, Molon Motor and Coil Corporation, respectfully requests that this Court enter an order finding the arbitration provision invalid, and set this case for trial in the Circuit Court of McHenry County, and any additional relief it is entitled.

**COUNT XII**
**DECLARATORY JUDGMENT**
**MISREPRESENTATIONS**
**AGAINST MISHCON, PETRSORIC AND RASKIN**

1-73.   Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.     Molon and Mishcon entered into a Retainer Agreement for legal services. (Ex. A).

75.     The scope of services for the Retainer Agreement included the following:

(a)     Right to Pursue Infringers. Client is executing this Retention Agreement to engage Mishcon's services in connection with investigating and asserting potential patent infringement claims for one or more of the Patents as well as any ancillary and/or supplemental claims, including, but not limited to theft of trade secrets ("Claim(s)" or "Lawsuit(s)"). Such representation might include negotiating agreements related to the Claims and/or prosecuting one or more Lawsuits ("Enforcement Activity") against entities selected by Client and Mishcon, referred to as "Infringer(s)".

76.     The Retainer Agreement set forth methods for Mishcon to withdraw from providing services:

5.      Withdrawal of Mishcon.

(a)    Client agrees that Mishcon, in its sole discretion and after completion of the Evaluation Period, may withdraw from its representation of Client in connection with this undertaking for any reason, including but not limited to the following remaining uncured after thirty (30) days' notice to Client:

(i)    Client insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by a good faith argument of an extension, modification, or reversal of existing law as determined in Mishcon's reasonable discretion;

(ii)    Client insists that Mishcon pursue a course of conduct that is illegal or that is prohibited under the State Bar Rules as determined in Mishcon's reasonable discretion;

(iii)    Client fails to perform any covenant (whether monetary or non-monetary) of this Retention Agreement and the expiration of a fifteen (15) day right to cure period after receipt of written notice from Mishcon;

(iv)    Client breaches this Retention Agreement;

(v)    Mishcon determines, after further investigation of the facts, that the value of the case does not justify its budgeted investment in the case; or

(vi)    Mishcon determines, after further investigation of the facts, that the facts are materially different from those represented to Mishcon by Client.

77.    The Retainer Agreement contained a paragraph stating:

11. Disputes.

(a)    Arbitration. All parties to this Retention Agreement agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Retention Agreement or arising out of or relating to Mishcon's representation of the Client, including disputes concerning Mishcon's fees or charges or any claims of malpractice, shall be finally settled by mandatory binding arbitration held in New York, New York and conducted in accordance with the applicable rules of the American Arbitration Association ("AAA"), with each party to bear its own costs and attorneys' fees and disbursements. Such proceeding shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three (3) arbitrator panel with each side selecting one arbitrator and the two arbitrators selected by the Parties choosing the third arbitrator. If any such dispute between the Parties concerning our fees or charges involves (i) an amount in question that is $50,000 or less; or (ii) each and every Party so agrees, such dispute or controversy shall be submitted to binding arbitration under Part 137 of the Rules of the Chief Administrator of the New York Courts. The Client

agrees that it has read the official instructions and procedures for Part 137 (a copy of which is available upon request), and agree to resolve fee disputes under Part 137 where applicable. The Client expressly agrees that prejudgment remedies, including but not limited to attachments, garnishments, receiverships and preliminary injunctions in aid of any arbitration between the parties may be adjudicated before (i) the AAA subject to the Optional Rules for Emergency Measures of Protection and any other applicable rules, or (ii) a court of competent jurisdiction. Judgment on a binding arbitration award may be entered in the United States District Court for the Southern District of New York or any other court of competent jurisdiction. Such proceedings have the potential to provide a more timely, more economic and more confidential resolution of any dispute between the Parties. The Parties further agree that there will likely be less discovery and a determination by an agreed upon arbitrator or arbitrators rather than a judge or jury. *The Parties mutually acknowledge that, by this agreement to arbitrate, each Party irrevocably waives its rights to court or jury trial of any such disputes. Client acknowledges that it has the right to consult separate legal counsel at any time as to any matter, including whether to enter into this Retention Agreement and consent to the foregoing agreement to arbitrate.*

(Exhibit B).

78.     Mishcon did not fulfill its obligations under the Retainer Agreement.

79.     Despite being retained to represent Molon in the trade secret matter, Mishcon stopped pursuing the trade secret claims several months prior to withdrawing.

80.     Mishcon did not complete discovery related to the trade secrets counts, failed to tell Molon that it was no longer pursuing the trade secret counts until several months after discovery had closed, pretended and misrepresented to Molon that Mishcon was still engaging in discovery after the discovery had closed, told the court without the permission or knowledge of Molon, that discovery was completed and that they were "probably" dismissing the trade secret case.

81.     Despite a provision permitting Mishcon to withdraw from the case, Mishcon simply stopped representing Molon in the trade secret issue.

82.     Mishcon, through Petrsoric, made material misrepresentations regarding the status of discovery, which prevented Molon from discovering the anticipatory breach and acting sooner to protect its interests.

83.     To permit Mishcon to enforce the Retention Agreement would be unconscionable.

Wherefore, the Plaintiff, Molon Motor and Coil Corporation, respectfully requests that this Court enter an order finding the arbitration provision invalid and set this case for trial in the Circuit Court of McHenry County, and any additional relief that it is entitled.

## COUNT XIII
## FRAUD AGAINST PETRSORIC

1-73.   Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.   Petrsoric had a fiduciary relationship and attorney-client relationship with Molon.

75.   One of his duties was the duty of utmost candor and fair dealings with his client.

76.   Petrsoric violated his duties of candor and fair dealings with Molon when he intentionally misrepresented the status of the case.

77.   Petrsoric's misrepresentations included continuing to take steps asking for information and preparation time from Molon with Molon deponents, even though these depositions were not going forward because (1) they were barred by the discovery cutoff, or (2) because Petrsoric had told the opposing party that he was awaiting a dismissal of the Trade Secret Counts as early as August or September of 2018, and thought the Trade Secret case was ending.

78.   Petrsoric further concealed the discovery closure and further delayed Molon's ability to reopen discovery with the court by falsely leading Molon to believe that discovery remained open and the case was ongoing, including sending purported outlines of deposition topics and requests to use conference rooms for depositions that he knew were never going to take place.

79.   Petrsoric failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, and the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages.

80.   As a result of the fraudulent misrepresentations, Molon suffered damages in the following categories:

a.    Attorney fees incurred after the malpractice had occurred in prosecuting both the patent case and attempts to reopen discovery to pursue the trade secrets case after the law firm withdrew.

b.    Damages from the misappropriation of Molon's trade secrets including Molon's cost of developing the trade secrets, Molon's loss of the business, Nidec's increase in business and marketplace share as well as punitive damages; and

c.    Attorney fees assessed in the fee petition brought against Molon.

Wherefore, Molon Motor and Coil Corporation respectfully requests that judgment be entered in favor of Molon Motor Coil Corporation and against Defendants in an amount in excess of $50,000.

### COUNT XIV
### DECLARATORY JUDGMENT
### FRAUD AGAINST MISHCON,
### PETRSORIC AND RASKIN

1-73.    Plaintiff reincorporates the allegations set forth in Paragraphs 1 through 73 above.

74.    Molon and Mishcon entered into a Retainer Agreement for legal services. (Ex. A).

75.    The Retainer Agreement contained a dispute resolution paragraph stating:

11. Disputes.

(a)    Arbitration. All parties to this Retention Agreement agree that any dispute or controversy arising out of or relating to any interpretation, construction, performance or breach of this Retention Agreement or arising out of or relating to Mishcon's representation of the Client, including disputes concerning Mishcon's fees or charges or any claims of malpractice, shall be finally settled by mandatory binding arbitration held in New York, New York and conducted in accordance with the applicable rules of the American Arbitration Association ("AAA"), with each party to bear its own costs and attorneys' fees and disbursements. Such proceeding shall be conducted before a single arbitrator, except in matters involving a dispute greater than five hundred thousand dollars, which shall be conducted before a three (3) arbitrator panel with each side selecting one arbitrator and the two arbitrators selected by the Parties choosing the third arbitrator. If any such dispute between the Parties concerning our fees or charges involves (i) an amount in question that is $50,000 or less; or (ii) each and every Party so agrees, such dispute or controversy shall be submitted to binding arbitration under Part

137 of the Rules of the Chief Administrator of the New York Courts. The Client agrees that it has read the official instructions and procedures for Part 137 (a copy of which is available upon request), and agree to resolve fee disputes under Part 137 where applicable. The Client expressly agrees that prejudgment remedies, including but not limited to attachments, garnishments, receiverships and preliminary injunctions in aid of any arbitration between the parties may be adjudicated before (i) the AAA subject to the Optional Rules for Emergency Measures of Protection and any other applicable rules, or (ii) a court of competent jurisdiction. Judgment on a binding arbitration award may be entered in the United States District Court for the Southern District of New York or any other court of competent jurisdiction. Such proceedings have the potential to provide a more timely, more economic and more confidential resolution of any dispute between the Parties. The Parties further agree that there will likely be less discovery and a determination by an agreed upon arbitrator or arbitrators rather than a judge or jury. The Parties mutually acknowledge that, by this agreement to arbitrate, each Party irrevocably waives its rights to court or jury trial of any such disputes. Client acknowledges that it has the right to consult separate legal counsel at any time as to any matter, including whether to enter into this Retention Agreement and consent to the foregoing agreement to arbitrate.

(Exhibit A).

76.     The Arbitration Agreement does not apply to fraud.

77.     Mishcon, through its attorney, Petrsoric, made fraudulent misrepresentations regarding the status of the trade secret case, purported to still engage in discovery despite discovery having already been closed, made representations to Molon that it was still engaging in discovery, prepared two Molon witnesses for depositions in the trade secret matter despite having told the District Court that discovery was complete, and Molon was considering dismissing the trade secret counts.

Wherefore, the Plaintiff, Molon Motor and Coil Corporation, respectfully requests that this

Court enter an order finding the arbitration provision invalid and set this case for trial in the Circuit

Court of McHenry County and any additional relief it is entitled.

Respectfully submitted,

By:     /s/ Kristin Tauras
One of the Attorneys for Plaintiff,
MOLON MOTORS AND COIL CORP.

Sara Cook – ARDC # 3126995
scook@mckenna-law.com
Kristin Tauras – ARDC # 6216004
ktauras@mckenna-law.com
James Cook – ARDC# 6325582
jcook@mckenna-law.com
McKenna Storer
1004 Courtaulds Drive #A
Woodstock, IL 60098
815-334-9690\Fax: 815-334-9697

*SUMMONS – 30 DAY*
### IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL CIRCUIT
### McHENRY COUNTY, ILLINOIS

(Name all parties)

Molon Motors and Coil Corp., an Illinois corporation

**Plaintiff(s)**

vs.

Mishcon de Reya, LLP, a New York Limited Liability Partnersp,

Case Number 20MR000505

John Petrsoric, Individually and Mark Raskin, individually

Amount Claimed $ 50,000 plus costs

**Defendant(s)**

# SUMMONS

To each Defendant: Mark Raskin, 115 E. 9th Street, Unit 8LM, New York, NY 10003-5414

**YOU ARE SUMMONED** and required to file an answer in this case, or otherwise file your appearance, in the office of the Clerk of this court, McHenry County Government Center, 2200 N. Seminary Avenue, Woodstock, Illinois, 60098, within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT OR DECREE BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.

**To the officer:**

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

WITNESS June 30                    20 20

Clerk of the Circuit Court

Plaintiff's attorney or plaintiff if he is not represented by an attorney

Name Kristin D. Tauras                    Prepared by Kristin D. Tauras

Attorney for Plaintiffs                    Attorney Registration No. 6216004

Address 1004 Courtaulds Dr., Ste. A

City, State Zip Woodstock, IL 60098

Telephone 815-334-9690

Email service@mckenna-law.com; ktauras@mckenna-law.com

IN THE CIRCUIT COURT OF THE TWENTY-SECOND JUDICIAL DISTRICT MCHENRY COUNTY ILLINOIS

| | |
|---|---|
| Plaintiff / Petitioner: | **AFFIDAVIT OF SERVICE** |
| MOLON MOTORS and COIL CORP., an Illinois Corporation | **Index No:** |
| Defendant / Respondent: | **20MR000505** |
| MISHCON DE REYA, LLP, a New York Limited Liability Partnership, JOHN PETSORIC, Individually and MARK RASKIN, Individually | |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at PO Box 582 , Guilderland, NY 12084 . That on Thu, Jul 02 2020 AT 02:44 PM AT 80 State St, Albany, NY 12207 deponent served the within SUMMONS AND COMPLAINT AT LAW FOR DECLARATORY JUDGMENT AND DAMAGES on MISHCON DE REYA, LLP c/o Registered Agent: Corporation Service Company

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:** MISHCON DE REYA, LLP c/o Registered Agent: Corporation Service Company a defendant, therein named, by delivering a true copy of each to John Doe, Authorized Employee of CSC personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be An Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper properly addressed to said defendant at defendant's last known residence, _____, and depositing said wrapper in a post office, official depository under the exclusive care and custody of the United States Post Office, department, with New York State. Mailed on _____.

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
Age: 40    Ethnicity: Caucasian    Gender: Male    Weight: 200
Height: 6'1"    Hair: Brown    Eyes: _____    Relationship: _____
Other

Austin Taylor

Sworn to before me on JUL 0 7 2020

Notary Public

Adrien LaBelle
Notary Public, State of New York
No. 01LA6186034
Qualified in Albany County
My Commission Expires April 28, 20 24

**Litigation Management**
*Representative*

1-302-636-5400

80 State Street, 10th Floor
Albany, NY 12207
United States
SOP@CSCGlobal.com

**CSC**

**CSC**

# PROCESS SERVER NOTICE

- Upon direction of counsel, we are not able to provide a specific employee name when receiving process. Please use "Legal representative of CSC". If you have "saved" an individuals name, please discontinue use.

- Under New York law, there is no statutory requirement for a registered agent to provide an employee's name when accepting service on behalf of a corporation.

- To the extent a court demands proof of service, the process server may offer to provide testimony regarding the delivery and/or we are willing to provide an affidavit regarding our business process and how certain documents were managed upon receipt.

If you have any questions, please feel free to contact our legal team at 302-636-5400